IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAE PAK,

                      Plaintiff,                OPINION AND ORDER

    v.

                                                     19-cv-275-wmc

DENIS MCDONOUGH, Secretary of the
Department Veterans Affairs,

                      Defendant.

*Pro se* plaintiff Jae Pak is proceeding in this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against Denis McDonough in his capacity as Secretary of the Department of Veterans Affairs. Pak claims that his rights under Title VII were violated when he was terminated from his probationary position as a general engineer at the Tomah VA Medical Center ("Tomah VAMC"), allegedly because he is Asian. Pak further claims that during his employment, he was subjected to a hostile work environment, which ultimately contributed to his termination.

Defendant seeks summary judgment on Pak's claims. (Dkt. #31.) Because no evidence of record indicates that Pak was terminated because of his race or national origin, and Pak's evidence of a hostile work environment does not support a Title VII claim, the court will grant defendant's motion.

UNDISPUTED FACTS[1]

**A. Pak's Probationary Appointment as a General Engineer**

In 2016, plaintiff Jae Pak was hired as a general engineer in the Tomah VAMC's

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying, record evidence.

Project Section, which was responsible for the design and construction of infrastructure on its campus. Pak's appointment was conditional, subject to completion of a one-year probationary period beginning on August 7, 2016.

During all times relevant to this lawsuit, Marvin Schaitel was the Chief Engineer of the Projects Section, and Pak's direct report. In turn, Schaitel reported to Ogle, as the chief of the VAMC's Facilities Service Line, who reported to Tomah VAMC's Associate Director Staci Williams. At the time they selected him, both Ogle and Schaitel were aware that Pak was Asian.

Because Pak reported directly to Schaitel, the two had daily contact, in person and over email. However, during his employment, Pak had limited contact with Ogle, and neither Schaitel nor Ogle had the authority to terminate an employee. That said, supervisors are required to study probationary employees closely to determine whether they are suited for successful government work, and when an employee's conduct, general character traits or capacity are not satisfactory, a supervisor is required to initiate action to separate an employee, and they could recommend a termination to Human Resources. In 2016 and 2017 Schaitel also supervised engineers Beth Heim and Chris Kraft, as well as engineering techs Andre Hayles, Jason Erdman and Nick Perna.

B. **Pak's probationary employment**

As a general engineer, Pak's duties included serving as a project manager. So, Pak was responsible for overseeing the scheduling, costs, quality and safety on his projects, to ensure that they were completed to the required specifications. These responsibilities required Pak to work with other VA staff and with contractors' employees.

2

For major projects, the Tomah VAMC would contract with outside firms to develop design plans or do the construction on a project. Project Section engineers worked as project managers and Contracting Officer's Representatives ("COR") on behalf of the VA. In that capacity, the engineers worked with other VA staff, and contractor employees, but also with stakeholders on the project.

During his employment, Pak was assigned as the engineer and COR on two major projects: the "Warehouse Project" and the "Correct IT Deficiencies Project." There is no dispute that Pak had interpersonal problems with both VAMC and contactor employees during both projects.

1. **Warehouse Project**

Pak began working on the Warehouse Project in October 2016. The project involved creating a design plan for a new warehouse on the Tomah VAMC campus. The contractor was Nagel Architecture and Engineering. On June 6, 2017, there was a final design review meeting. Among those invited to the meeting were Ogle and Schaitel. Pak felt that Ogle was dominating the conversation and arguing with Kurt Brownell and the maintenance team. Pak and Ogle also had a disagreement about certain design details. Worse, at one point, Pak told Ogle that he was wasting people's valuable time. In response, Ogle told Pak that they should discuss their differences about the meeting privately.

Schaitel's impression of the interchanges during that meeting between Ogle and Pak was that Pak's behavior was disrespectful. VAMC Safety Manager Brandy Pulver, who was also present at the meeting, raised similar concerns about Pak's behavior, so much so, that she emailed Schaitel after the meeting to express her and others' concern about Pak's confrontational and disrespectful behavior during the June 6 meeting, as well as at a second

3

meeting that took place on June 7. Specifically, Pulver wrote that she was "concerned for everyone's welfare." (Ex. 2 (dkt. #34-2) 3.) In turn, Schaitel forwarded Pulver's email to Human Resources.

### 2. Correct IT Deficiencies Project

Around this time, Pak was also working on the Correct IT Deficiencies Project, a construction project to correct water seepage and other issues in one of the Tomah VAMC buildings. Platt Construction was the general contractor on the project, and Platt's employee, Dawn Harmon, was the project manager. On April 19, 2017, a preconstruction kickoff meeting was held, with the intent that construction would begin a week or two later. However, on May 9, Harmon spoke with Schaitel about issues she was having with Pak on the project. Harmon reported on Pak's apparent lack of respect for sub-contractors, and his inappropriate gender remarks. That same day, Pak and Harmon exchanged emails about the project, to which Schaitel was copied. At one point during their exchanges Pak copied in Joan Platt, one of the owners of Platt Construction, and he also asked that she forward the email onto Dick Platt, Platt Construction's President and co-owner.

The next day, May 10, Platt's Senior Vice President, Mike Gastrow, emailed Pak with a copy to Schaitel. Among other things, Gastrow advised Pak that: Pak should direct complaints to him, not the owners of the company; Pak's conduct was unprofessional; and Platt had concerns about his conduct, including soliciting lunches from Platt and condescending remarks to its employees. Gastrow also added that he had received no positive feedback on Pak's work.

On June 8, Harmon next reported to Schaitel that Pak had referred to another Platt employee as a "bitch" during a phone conversation. (Schaitel Decl. (dkt. #34) ¶ 23.) Pak

4

disputes using that word, but he does not dispute that this is what Harmon reported to Schaitel. At that point, Schaitel emailed Human Resources again, expressing his further concerns about Pak and providing documentation related to those concerns. Schaitel was also keeping Ogle informed about the ongoing issues with Pak. On June 12, Gastrow also sent Schaitel a letter, asking that Pak be removed from the Correct IT Deficiencies project, citing his unprofessionalism, unwarranted holding of payment, harassing behavior and delaying the project's progress. Gastrow further included multiple emails and documents in support of that request, as well as a written narrative summarizing Platt's issues with Pak.

On June 14, 2017, Pak met with Harmon and another Platt employee, Tom Vetter, in Pak's office. The plan was to discuss issues related to the Correct IT Deficiencies Project. Pak also invited a fellow VAMC engineer, Chris Kraft, to join the meeting, apparently to discuss items still necessary to start construction on the project. At one point, Harmon, Vetter and Kraft left the meeting, then returned to Pak's office a half-hour later with yet another VAMC engineer, Heim. At that point, Pak became angry and loud. Pak told Kraft to "get the hell out of [his] office." (Pak Dep. (dkt. #38) 38:3-39:22.) Apparently, Pak then tried to leave the office himself, but as he did so, Pak made physical contact with Heim because she was in his way. (Schaitel Decl. (dkt. #34) ¶¶ 25-26.) For his part, Pak says that he did not *intend* to make physical contact with Heim but concedes that physical contact occurred on his way out.

5

After this incident, Heim, Kraft, Erdman, Harmon and Pak all prepared written statements about the meeting and submitted them to Schaitel.[2] The statements described Pak as loud, yelling, profane, aggressive, aggravated and out of control. To that, Kraft also added other concerns he had with Pak, including hearing Pak call a Platt employee a "bitch" during a phone conversation, and staff's reluctance to meet with Pak. However, Pak's version of the June 14 meeting varied: he admitted making physical contact and "pushing his way out" of the office but did not intend her physical harm. (*See* dkt. #38-1, at 5.)

### C. Pak's termination

Both Schaitel and Ogle reviewed these written statements, and then discussed Pak's behavior on June 14 with Human Resources Officer David Dechant, as well as Associate Director Williams. Williams told them that it was unacceptable for any VA employee to lay hands on another VA employee.[3] Schaitel also shared Gastrow's May 10 letter about Pak with his supervisor Ogle and Human Resources.

Schaitel provides more details about issues with Pak, while acknowledging that he had assessed Pak's performance in November 2016 and April 2017 positively. Still, during the April 2017 progress review, Schaitel brought up the concern about Pak had solicited lunch from contractors. Specifically, Schaitel was concerned that soliciting lunch was not only unprofessional, but also violated government ethics rules. Schaitel also instructed Pak to reduce the number of visits he made to contractors. After that meeting, Schaitel still

---

[2] As a VAMC engineering tech, James Erdman was part apparently of the June 14 meeting as well.
[3] Williams contacted the VA Police Department to investigate the June 14 incident because of the existence of physical contact between employees. While the Tomah VA Police Department chose to cite Pak for disorderly conduct, that citation was later dismissed by a court. Even so, no other engineering staff had ever been cited for disorderly conduct.

6

continued to have concerns about Pak, which were then heightened in May after Harmon reported concerns about Pak's disrespectful behavior and the difficulties others were continuing to have in working with him.

In addition to the issues with the two projects described above, Pak: (1) set up a meeting with a contractor without a formal contract in place, requiring the meeting to be cancelled and for Schaitel to step in; (2) left work early without authorization; and (3) sent emails containing content or language that Schaitel deemed unprofessional or inappropriate. In particular, Schaitel attests that having addressed this kind of behavior with Pak, he had expected Pak's conduct to improve. When it did not, Schaitel concluded that putting Pak on a formal performance improvement plan would be pointless. Rather, based on the issues, Gastrow's June 12 letter, and the June 14 incident, Schaitel believed that Pak was not a good fit for the Tomah VAMC. Thus, Schaitel recommended to Human Resources that Pak be terminated. When Ogle concurred, VAMC Human Resources Officer Dechant decided to terminate Pak and wrote Pak a letter informing him of his termination effective June 20, 2017. Schaitel gave Pak that letter on June 20.

**D. Pak's evidence of discriminatory treatment and hostile work environment**

Upon receiving his termination notice, Pak believed that he must have been terminated because he is Asian. However, at times, Pak has also contends that Ogle decided to terminate him because: (1) he "stood up to him" during the June 6 design review meeting; (2) Ogle knew that Pak did not respect him; and (3) disrespecting Pak was part of a routine practice by Ogle to harass Projects Section staff and engineers to discourage others from speaking up and asking questions.

7

To prove his hostile work environment claim, Pak points to events during the June 6 design review meeting and the June 14 meeting with Platt employees. While Pak concedes that neither Schaitel nor Ogle were present for the June 14 meeting, he claims that the meeting is evidence of a hostile work environment because his fellow engineers, Heim and Kraft, chastised him and did not take his side in front of the Platt employees. Pak also maintains that the VA was a hostile work environment because many good staff and engineers were "forced" to leave, naming as examples: Kurt Brownell, Jim Plimpton, Michael Cauthn, Theresia Reistadt, Andre Hayles, Nick Perna, Miriam Stewart, Jeff Bahr, and another unknown employee. However, five of those individuals were white, and multiple of them did not report to either Ogle or Schaitel. As for Hayles, she is African American, and she worked as an engineer technician at the VA, before transferring to a VA facility in North Carolina in April 2017. Pak maintains (without corroborating evidence) that Hayles left because there were so few minorities in the Tomah area, and Hayles was not getting good projects. As for Bahr and Perna, Pak maintains (again with no evidence) that even though these two employees were Ogle's and Schaitel's favorite employees, morale was so low that they left as well.

Next, Pak points to two other interactions with Schaitel and Ogle that he describes as harassment. First, Pak wanted to create a conference room in a building. Schaitel told Pak that he was wasting his time but was allowed him to create it if it did not interfere with Pak's duties. Second, Pak cites Ogle's behavior toward him during the June 6 Warehouse Project design review meeting, when true to Ogle's style, he entered the meeting, interrupted and dominated the conversation, then directed how the project would proceed.

Finally, Pak identifies three other employees as comparators who he claims were similarly situated to him and treated more favorably: engineering tech Perna and engineers Heim and Kraft. First, Pak says Perna was treated more favorably because Schaitel spent time with him, and he accepted a proposal that Perna made for new IT software, although Pak also concedes that he never requested an IT software package and that Schaitel's approval of the software was appropriate. Second, Pak contends that Heim was treated more favorably because she did not do a good job in the same position but was not fired, although Pak offers no evidence of Heim not meeting expectations, contending that, without supporting evidence, there were delays on Heim's projects and rumors that the projects had significant overcosts. Third, Pak claims Kraft was not fired even though he gave out cost information to contractors, although conceding he was eventually fired, just not for the same reasons as Pak.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then to survive summary judgment, the non-moving party must provide evidence "on which the jury could reasonably find for" them. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (brackets omitted). During summary judgment, disputed facts are viewed in a light most favorable to the plaintiff as the non-moving party; however, this treatment does not extend to inferences supported by only speculation or conjecture. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d

807, 812 (7th Cir. 2017); *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019). "As the put up or shut up moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citations omitted). Here, defendant moves for summary judgment on the merits of both of plaintiff's claims, and unfortunately for plaintiff, he has responded with speculation rather than proof, despite having the burden of proof.

I.   Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to refuse to hire, deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of "such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Because defendant has moved for summary judgment, the "singular question" for the district court is whether the plaintiff has introduced evidence that would "permit a reasonable factfinder to conclude" that the plaintiff's national origin "caused the discharge or other adverse employment action." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018).

While a plaintiff is free to offer direct or circumstantial evidence of discrimination, "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016).  Still, the "familiar" burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), allows "a plaintiff to make a *prima facie* case of discrimination, at which point the burden shifts to the employer to

10

offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020), *reh'g denied* (July 31, 2020).  To establish a prima facie case, a plaintiff must at least show:  (1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another, similarly-situated employee outside of his protected class received better treatment from his employer.  *Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789, 791–92 (7th Cir. 2020).

      Pak has not submitted direct evidence that his termination related to his race or national origin.  Instead, he appears argue that the reason given for his termination was pretext, but before any burden-shifting applies, Pak still must establish a prima facie case of discrimination.  Here, he has not submitted evidence that he was meeting the VAMC's legitimate employment expectations, particularly with respect to working collaboratively with other VAMC employees and with contractors.

      To start, there is no dispute that Pak disagreed with his supervisors repeatedly about how projects should proceed, openly arguing with Ogle during the June 6 meeting about the Warehouse Project.  Even more problematic than Pak's failure to work collegially with his supervisors was his unprofessional, inappropriate and combative behavior towards other VAMC staff and contractors, which in the end is why Schaitel determined that Pak was not meeting expectations, and why Ogle agreed with Schaitel's assessment.

      Indeed, Pak does not and cannot dispute that key contractors on both the Warehouse and the Correct IT Deficiencies Projects complained about his behavior, with Gastrow specifically asking that Pak be completely removed from involvement in the

11

Correct IT Deficiencies Project. Likewise, there is no dispute that Pak's behavior during the June 6 meeting regarding the Warehouse Project caused Pulver to reach out directly to Schaitel and complain about Pak's behavior, going as far as stating that she was concerned for the welfare of those involved in the project. The project involving Platt Construction was particularly problematic, with Pak butting heads with Harmon, who complained about Pak for multiple reasons, including that he: (1) used inappropriate language, (2) was regarded by others as unprofessional and disrespectful, (3) called a contracting employee a "bitch," and (4) made other rude comments related to gender. Then, Pak failed to follow the appropriate chain of command by reaching out directly to Platt's owners, as opposed to Gastrow, who in May, raised additional concerns about Pak acting unprofessionally and soliciting lunch from the contractor. Finally, just one month later, Gastrow asked for him to be removed from the project completely, apparently due to Harmon's continuing concerns about Pak's behavior. Despite suggesting that VAMC was otherwise motivated, Pak has offered no rebuttal to this disturbing complaint by a key contractor.

The evidence documents Pak's ongoing problems with other VAMC employees as well, the primary example being the June 14, 2017, incident in Pak's office. Although the court accepts Pak's assertion that he did not *intend* to assault or hurt Heim when he made physical contact with her in an effort to leave his own office, Pak does not dispute that this contact occurred during an argument, nor that multiple witnesses to this incident described Pak as yelling, aggressive, profane, and being "out of control." (DPFOF (dkt. #33) ¶ 84.) Certainly, a record of physical intimidation or assault against another employee was a legitimate basis for VAMC to conclude that Pak was not meeting legitimate expectations.

Despite this record, Pak maintains that he was meeting or exceeding expectations, characterizing the unpleasant exchanges between him and others on the job as evidence of unwillingness by VAMC management to recognize their shortcomings.  He points out his early positive performance reviews.  Actual performance of job duties is not the court's sole focus of performance, and insubordination and repeated, unpleasant interactions with coworkers and outside contractors in particular bear on whether an employee is meeting expectations as well.  *Zayas v. Rockford Mem. Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014) (citing *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007)); *see also Abrego v. Wilkie*, 907 F.3d, 1004, 1013 (7th Cir. 2018) (finding employee who argued with a patient, yelled at and intimidated coworkers, and behaved disrespectfully to superior was not meeting expectations).  Thus, a positive performance review does not create a dispute of material fact if the negative conduct identified by the employer occurred *after* the review, as Pak's did here.  *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545-46 (7th Cir. 2002) (citation omitted).  Moreover, there is no question that by the time Pak was terminated, his interpersonal dynamic with his superiors, contractors and peers at VAMC had become increasingly combative and unpleasant.  Therefore, Pak's discrimination claim fails because of overwhelming, undisputed evidence that he was not meeting VAMC's legitimate employment expectations.

Of course, Pak's claim also fails because he was terminated for a non-discriminatory reason, and no evidence suggests that reason was pretextual.  To the contrary, as just recited, Schaitel recommended Pak's termination due to his lack of professionalism, condescending behavior, inappropriate language, and anger issues while still on a probationary hiring status.  Again, Pak insists that because he was performing well with

13

respect to the substance of his work, his termination had to have been because of his race, but his belief that he was performing well does not establish pretext. *Abebe*, 35 4th at 607. Moreover, while Pak elaborates in his opposition brief at length about the challenges of living as a minority in Tomah, Wisconsin, his obligation at this stage in this lawsuit was to come forward with actual, direct or circumstantial evidence that his termination was because of his race, and speculation or a general indictment of entire communities is not enough to get by a summary judgment motion. *See Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017) ("[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."). Because Pak has been unable to come forward with any actual evidence refuting the VAMC findings that his combative and unprofessional behavior warranted termination, his discrimination claim fails as a matter of law.

## II. Hostile work environment

Pak's claim of a hostile work environment is even weaker on the record before this court as summary judgment. While "[s]ubjecting an employee to a hostile work environment counts as an adverse action ('unlawful employment practice') within the meaning of Title VII's prohibition of race discrimination in 42 U.S.C. § 2000e-2(a)," *Gates v. Bd. of Education of the City of Chicago*, 916 F.3d 631, 636 (7th Cir. 2019) (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)), a plaintiff must establish four elements to avoid summary judgment on a hostile work environment claim: "(1) the work environment must have been both subjectively and objectively offensive; (2) [his race] must have been the cause of the harassment; (3) the conduct must have been severe or

pervasive; and (4) there must be a basis for employer liability." *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014) (quoting *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014)); *Gates v. Board of Educ. of the City of Chicago*, 916 F.3d 631, 636 (7th Cir. 2019).

Pak's hostile work environment claim fails at the first element because Pak simply did not encounter the type of patently offensive conduct that alters the nature of one's employment. Instead, Pak faced interpersonal dynamics and disagreements that are common in any workplace where employees are expected to share ideas and work together. Some disagreements are inevitable, and Pak describes two meetings that were no doubt uncomfortable. However, they appear to have been uncomfortable and unpleasant for everyone involved, and by all accounts Pak's confrontational style escalated the unpleasantness, and Pak offers *no* evidence indicating that he was the victim of a personality attack.

As to the third element in particular, a defendant's harassing conduct need not be *both* severe and pervasive; one incident of conduct that is sufficiently severe may be enough to constitute a hostile work environment. *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 601 (7th Cir. 2014) (citing *Jackson v. Cty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007); *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678 (7th Cir. 2001)). However, a court evaluating the pervasiveness and severity of conduct is instructed to examine "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (quoting *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001)). Consistent with this standard, the court is not to consider

separately whether each incident is severe or pervasive. *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 626 (7th Cir. 2018) (citing *Hall v. City of Chi.*, 713 F.3d 325, 331 (7th Cir. 2013)). That said, courts may consider factually distinct complaints separately. *See Orton-Bell*, 759 F.3d at 773-76 (explaining why the "sex-on-the-desk incident" failed to establish a hostile work environment before explaining why "[t]he constant barrage of sexually charged comments" succeeded).

Pak contends that Schaitel and Ogle humiliated or belittled him, either during their one-on-one interactions or during these meetings. In particular, Pak claims that Schaitel dismissed Pak's effort to create a conference room in the VAMC's basement as a waste of time. However, none of these interactions involve the type of humiliation or offensive conduct that would alter the nature of Pak's employment. At worst, Schaitel disagreed about the merit of Pak's project, so he expressed skepticism and directed Pak not to let the project interfere with his other responsibilities. Although Pak seems to believe that Schaitel did not care about his efforts to facilitate camaraderie among VAMC staff, Schaitel's dismissal of those efforts was not so rude or offensive as to create a hostile work environment, or in any way related to Pak's race; at the very least, no reasonable jury could find either on this record.

Pak also points to Ogle's behavior during the June 6 meeting, but at most characterizes Ogle's behavior during the meeting as typical of his work style, by which he tends to dominate meetings. Thus, while Pak may not have liked Ogle's general demeanor during meetings, he does not offer details as to how Ogle made those meetings so uncomfortable that the general tenor of the meeting became truly hostile, much less that Ogle's domineering approach to meetings impacted Pak's day-to-day work environment.

In fact, Pak concedes that his interactions with Ogle were few and far between, in part because Ogle was not often present. With no evidence suggesting that Ogle's behavior was abusive or humiliating, as opposed to domineering, Pak has not shown, and a reasonable jury could not find, his behavior created a hostile work environment. *Compare Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (supervisor's rudeness and unprovoked criticism directed at plaintiff was not sufficiently severe or pervasive to create a hostile work environment).[4]

Ultimately, although Pak may have felt uncomfortable and unhappy with the dynamic at the VAMC, no reasonable factfinder could conclude that Pak endured such offensive or humiliating conduct that his work environment was altered in a meaningful way, much less that the mistreatment was because of his race or national origin. Therefore, defendant is entitled to summary judgment on this claim as well. Accordingly, the court will grant defendant's motion for summary judgment, direct the clerk of court to enter judgment in defendant's favor and close this case.

ORDER

IT IS ORDERED that:

1) Defendant Denis McDonough's motion for summary judgment (dkt. #31) is GRANTED.

2) Plaintiff's motion for discovery (dkt. #46) is DENIED as moot.

---

[4] Although Pak suggests that the environment was so toxic at the VAMC that other employees left, but he has not shown that these other employees were racial minorities, nor provided evidence as to why any other employees left the VAMC. Therefore, like Pak's discrimination claim, his assertion that other employees left because of the work environment, remains speculative at best.

3) The clerk of court is directed to enter final judgment in defendant's favor.

Entered this 16th day of February, 2023.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge